IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|  |  |  |
|---|---|---|
| **MERRICK STEDMAN,** | * | |
| Plaintiff, | * | |
| v. | * | Civil No. SAG-24-01779 |
| **ROBERT S. DEAN, JR.,** *et al.*, | * | |
| Defendants. | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM OPINION

Plaintiff Merrick Stedman ("Plaintiff") filed a Complaint against Defendants Robert S. Dean, Jr., Warden of the Jessup Correctional Institution ("JCI"), Warden Gregory A. Werner, Warden of the Maryland Correctional Institution – Hagerstown ("MCI–H"), and Michelle A. Taylor, a Commitment Records Specialist Supervisor with the Maryland Division of Correction ("DOC") (collectively, "Defendants") for claims arising out of Plaintiff's transfer from state custody to the custody of United States Immigration and Customs Enforcement ("ICE"). Currently pending is Defendants' motion to dismiss the Complaint, ECF 8, which argues it should be dismissed because of qualified immunity, statutory immunity, and failure to state a claim against certain Defendants. Plaintiff filed an opposition, ECF 9, and Defendants filed a reply, ECF 10. No hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2023). For the reasons that follow, the motion to dismiss will be granted in part and denied in part.

I.     **FACTUAL BACKGROUND**

The following facts are derived from the Complaint, ECF 1, and are assumed to be true for purposes of this motion. Plaintiff is a Jamaican national who immigrated to the United States in 1981 when he was six years old. *Id.* ¶ 9. At age 17, Plaintiff was convicted of murder and

received a life sentence. *Id.* ¶ 10. The following year, in 1993, ICE's predecessor agency (Immigration and Naturalization Services or "INS") issued a Form I-247N "Notice of Action" to the Maryland facility where Plaintiff was incarcerated. *Id.* ¶ 11. The form requested that the Maryland facility "accept this notice as a detainer" and "notify INS at the time of release at least 30 days prior to release or as much in advance as possible." *Id.* The Form I-247N did not indicate that INS directed local officials to take Plaintiff into custody or suggest that he was subject to deportation or removal. *Id.* ¶¶ 12–13.

Subsequently, in 1998, INS sent Plaintiff a notice to appear (Form I-862), which alleged that he was subject to removal from the United States due to his criminal conviction. *Id.* ¶ 15. A federal immigration judge ordered his removal on or about June 5, 1998, but further removal proceedings were put on hold because Plaintiff continued serving his murder sentence. *Id.* ¶ 15. The final removal order did not direct or authorize state prison officials to continue to detain Plaintiff. *Id.* ¶ 16.

In 2021, Maryland enacted the Maryland Juvenile Restoration Act ("JUVRA"), which, in relevant part, allows a court, after certain findings, to reduce a sentence for a person convicted of a crime as a child who has served more than twenty (20) years of that sentence. *Id.* ¶ 17. Plaintiff filed a motion to reconsider his sentence pursuant to JUVRA. *Id.* ¶ 18. After a motions hearing on September 30, 2022, at which the state did not oppose a sentence reduction, a state court judge granted the motion, suspended the remaining term of Plaintiff's sentence, and placed him on five years of unsupervised probation. *Id.* ¶ 19–20.

Nevertheless, on that same date, Defendant Michelle A. Taylor, the Commitment Records Specialist Supervisor and Manager, electronically signed a document providing that Plaintiff would be released "to a detainer lodged on 7/29/1993 by Immigration and Customs

Enforcement." *Id.* ¶ 22. Due to Taylor's notation, Plaintiff was held at JCI through October 3, 2022, before being transferred to MCI–H and held until October 5, 2022. *Id.* ¶¶ 24, 25. The Complaint alleges, as to Warden Dean at JCI and Warden Werner at MCI–Hagerstown, that "in his role as Warden," each Warden "approved and facilitated Plaintiff's continued detention." *Id.* ¶¶ 24, 25. The Complaint further alleges that the Wardens "had actual or constructive knowledge that Ms. Taylor and other prison officials had a practice of holding inmates beyond their release date pursuant to ICE detainers which do not provide probable cause of criminal activity." *Id.* ¶ 26. The Complaint also alleges that, "Ultimately, Defendants Taylor, Werner, and/or Dean, and/or other prison officials under their explicit direction, contacted ICE officials to alert them that Mr. Stedman's sentence had been reduced to 'time served' and that he was being held pursuant to the 1993 INS notice." *Id.* ¶ 27. On October 5, 2022, the Complaint alleges that "Defendants" transferred Plaintiff's custody to ICE. *Id.* ¶ 30. Plaintiff was deported to Jamaica on July 27, 2023. *Id.* ¶ 32.

Plaintiff's Complaint asserts six counts: (1) violation of the Fourth and Fourteenth Amendments to be free from unlawful search, seizure and detention without a warrant or probable cause; (2) violation of the Fifth and Fourteenth Amendments to be free from deprivation of liberty without due process; (3) violation of Article 24 of the Maryland Declaration of Rights; (4) violation of Article 26 of the Maryland Declaration of Rights; (5) false imprisonment, and (6) gross negligence.

## II.   MOTION TO DISMISS

Defendants' motion raises three arguments in favor of dismissal. This Court will address each in turn.

3

### A. QUALIFIED IMMUNITY

Defendants seek to dismiss Plaintiff's federal constitutional claims, invoking qualified immunity. While that defense may be raised in a Rule 12(b)(6) motion to dismiss, *Jenkins v. Medford*, 119 F.3d 1156, 1159 (4th Cir. 1997), "when asserted at this early stage in the proceedings, 'the defense faces a formidable hurdle' and 'is usually not successful.'" *Owens v. Balt. City State's Attorney's Office*, 767 F.3d 379, 396 (4th Cir. 2014) (quoting *Field Day, LLC v. Cnty. of Suffolk*, 463 F.3d 167, 191–92 (2nd Cir. 2006)). "To establish a qualified-immunity defense, a public official must demonstrate that (1) a plaintiff has not alleged or shown facts that make out a violation of a constitutional right, or that (2) the right at issue was [not] clearly established at the time of' its alleged violation." *Owens*, 767 F.3d at 395–96 (internal quotations omitted). To determine whether an official's conduct violated clearly established law, this Court must consider whether "at the time of the challenged conduct, [t]he contours of [a] right [are] sufficiently clear that every reasonable official would…underst[and] that what he is doing violates that right." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011) (internal quotation marks omitted). In other words, "existing precedent must have placed the statutory or constitutional question beyond debate." *Id.*

Immigration "detainers" exist at the intersection of criminal law and civil proceedings. Criminal arrests typically occur after a probable cause determination and issuance of a warrant by a judicial officer. *Illinois v. Gates*, 462 U.S. 213, 216 (1983). Warrantless arrests are only constitutionally permissible in certain limited circumstances. Here, there are no allegations that a criminal arrest warrant had issued for Plaintiff. And continued detention after the grounds for an initial arrest have concluded, such as expiration of a sentence, is treated for constitutional purposes as a new arrest. *See Morales v. Chadbourne*, 793 F.3d 2018, 217 (1st Cir. 2015) ("Because Morales was kept in custody for a new purpose after she was entitled to release, she

was subject to a new seizure for Fourth Amendment purposes."); *see also Arizona v. United States*, 567 U.S. 387, 413 (2012) ("Detaining individuals solely to verify their immigration status would raise constitutional concerns.") *United States v. Mason*, 628 F.3d 123, 136 (4th Cir. 2010) (Gregory, J., dissenting) (separate reasonable suspicion required to perform a stop and to extend that stop).

While federal officials operate under different rules, for state and local officials, "immigration stops and arrests [are] subject to the same Fourth Amendment requirements that apply to other stops and arrests." *Morales*, 793 F.3d at 215–16 . Immigration proceedings, of course, are civil, not criminal, in nature. *Arizona*, 567 U.S. at 396. Accordingly, "[b]ecause civil immigration violations do not constitute crimes, suspicion or knowledge that an individual has committed a civil immigration violation, by itself, does not give a law enforcement officer probable cause to believe the individual is engaged in criminal activity." *Santos v. Frederick Cnty. Bd. of Com'rs*, 725 F.3d 451, 465 (4th Cir. 2013). In *Santos,* the Fourth Circuit noted that in the absence of a criminal arrest warrant or any other basis to make a warrantless arrest, state and local law enforcement officers may only detain or arrest an individual for known or suspected civil immigration violations under "express direction or authorization by federal statute or federal officials." *Id.* In that case, the Fourth Circuit deemed the detention and arrest of the plaintiff improper, because local law enforcement officers had discovered an immigration warrant during a routine citizen encounter but had received no instruction from the federal government to take the plaintiff into custody. *Id.*

Plaintiff also cites *Artiga Carrero v. Farrelly*, 270 F. Supp. 3d 851 (D. Md. 2017), a case where a local law enforcement officer engaged in a traffic stop because he noticed that the plaintiff was Latina, and a search of her identification in the NCIC database revealed a civil

5

order of removal from immigration authorities. The local officer then arrested Plaintiff, stating he needed to investigate further. Plaintiff was transported to the detention center and eventually transferred to ICE custody. The Court declined to find that the local officer enjoyed qualified immunity because Plaintiff had adequately pled that, at the time the local officer took her into custody, he had not had any direction or authorization from federal statutes or officials to detain her. *Id.* at 873.

Defendants attempt to distinguish *Santos* and *Artiga Carrero* because in those cases, local officers detained a plaintiff without having received any communication or direction from ICE to do so. ECF 10 at 5. Defendants argue that, in this case, INS had issued the Form I-247N detainer and that their decision to keep Plaintiff detained was therefore warranted. But their argument ignores the fact, alleged by Plaintiff, that the Form I-247N detainer issued in 1993 did not direct further detention of Plaintiff. While the form stated that it should be "lodged as a detainer," it simply requested the local authorities to provide immigration officials with advance notice of Plaintiff's release. This case therefore squarely falls within the purview of *Santos* and *Artiga Carrero*, because Defendants had received no communication or direction from ICE or its predecessor entity to detain Plaintiff after his release from state custody[1].

---

[1] Defendants argue that *Rios v. Jenkins*, 390 F. Supp.3d 714 (W.D. Va. 2019), is persuasive precedent. In *Rios,* a local official received a Form I-247 detainer and an administrative warrant issued by ICE in 2017. That 2017 version of Form I-247 expressly requested that the Jail "[m]aintain custody of the alien for a period NOT TO EXCEED 48 HOURS beyond the time when he/she would otherwise have been released from [the Jail's] custody to allow DHS to assume custody." *Id.* at 719. *Rios* is readily distinguishable because the detainer in the instant case did not request that Plaintiff be maintained in custody for any period of time, it simply asked to be provided notice prior to his release. Unsurprisingly, it appears Form I-247 underwent significant revision in the 24 years between 1993 and 2017. Of course, this may explain why local officials in this case believed that Form I-247 directed continued detention, because they would be more familiar with the modern iterations of that form.

While Defendants will of course be free to re-raise their qualified immunity defense after further facts have been elucidated through discovery, this Court cannot conclude at this stage that qualified immunity applies, in light of the facts alleging that local officials detained a plaintiff on a civil immigration notice absent direction from federal officials to do so.

### B. STATUTORY IMMUNITY

Defendants argue that Plaintiff's state law claims must be dismissed pursuant to the statutory immunity granted by the Maryland Tort Claims Act ("MTCA"). That statute provides that State personnel "are immune from suit in courts of the State and from liability in tort for a tortious act or omission that is within the scope of the public duties of the State personnel and is made without malice or gross negligence." Cts. and Jud. Proc. § 5-522. The MTCA's sovereign immunity applies to both constitutional and intentional torts. *Lee v. Cline*, 384 Md. 245, 266 (2004). A plaintiff must "sufficiently allege[] malice or gross negligence" and may not rely on "conclusory allegations" to defeat MTCA immunity. *Barbe v. Pope*, 402 Md. 157, 181–82, 188 (2007). Malice is "conduct characterized by evil or wrongful motive, intent to injure, knowing and deliberate wrongdoing, ill-will or fraud." *Id.* at 182 (internal quotations omitted). And a government official acts with gross negligence "only when he or she inflicts injury intentionally to is so utterly indifferent to the rights of others that he or she acts as if such rights did not exist." *Cooper v. Rodriguez*, 443 Md. 680, 708 (2015)

Plaintiff's complaint contains no factual allegations suggesting that Defendants here acted with the requisite malice or gross negligence. He offers no evidence that any of these Defendants knew or interacted with him at any point in time and no allegations to suggest that what happened in this case is any more than (at best) a misreading of a very old INS form to request extended detention when, in fact, the older version of the form did not include that

7

request. Plaintiff himself alleges that the updated version of Form I-247 requests a 48-hour immigration hold. ECF 1 ¶¶ 40, 41. In light of those alleged facts, and the absence of any factual allegations suggesting malice or gross negligence, all of the state constitutional and common law tort claims against the Defendants will be dismissed without prejudice.

### C. FAILURE TO STATE A CLAIM AGAINST SUPERVISORY DEFENDANTS

Finally, Defendants Dean and Werner contend that the federal constitutional claims against them must be dismissed because the Complaint fails to allege their personal responsibility for any constitutional violation that may have occurred. This Court agrees.

#### 1. Legal Standards

A defendant is permitted to test the legal sufficiency of a complaint by way of a motion to dismiss. *See, e.g.*, *In re Birmingham*, 846 F.3d 88, 92 (4th Cir. 2017); *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 165–66 (4th Cir. 2016). A Rule 12(b)(6) motion constitutes an assertion by a defendant that, even if the facts alleged by a plaintiff are true, the complaint fails as a matter of law "to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6).

Whether a complaint states a claim for relief is assessed by reference to the pleading requirements of Rule 8(a)(2), which provides that a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." *Id.* 8(a)(2). The purpose of the rule is to provide the defendant with "fair notice" of the claims and the "grounds" for entitlement to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007). In reviewing a Rule 12(b)(6) motion, a court "must accept as true all of the factual allegations contained in the complaint" and must "draw all reasonable inferences [from those facts] in favor of the plaintiff." *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011) (citations omitted); *Houck v. Substitute Tr. Servs., Inc.*, 791 F.3d 473, 484 (4th Cir. 2015). But if a

complaint provides no more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action," it is insufficient. *Twombly*, 550 U.S. at 555.

Fourth Circuit law requires that a Plaintiff seeking to establish supervisory liability in a § 1983 action plausibly plead facts suggesting: "(1) that the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to citizens like the plaintiff; (2) that the supervisor's response to that knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices; and (3) that there was an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff." *Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994).

### 2. Analysis

Plaintiff's claims against Warden Dean and Warden Werner are simply the sort of "labels and conclusions," unsupported by facts, that *Twombly* prohibits. There are no particularized facts pertaining to actions taken or facts known by either Warden, just generic, indefinite phrases like "approved and facilitated," or "had actual or constructive knowledge." In fact, Plaintiff's assertion that "Defendants Taylor, Werner, and/or Dean, and/or other prison officials under their explicit direction, contacted ICE officials to alert them that Mr. Stedman's sentence had been reduced to 'time served' and that he was being held pursuant to the 1993 INS notice." Id. ¶ 27, illustrates Plaintiff's evident lack of knowledge of which individuals took which actions and how the situation unfolded.[2] While group pleading can be permissible in certain circumstances, it must be "plausible that each defendant was involved in all of the facts as alleged." *See Sprint*

---

[2] As currently pled, some of Plaintiff's assertions are not particularly plausible, as it is unlikely that JCI officials would be making contact with ICE officials about Plaintiff's immigration status after his departure from their facility.

*Nextel Corp. v. Simple Cell, Inc.*, Civil No. CCB-13-617, 2013 WL 3776933, at *2 (D. Md. July 17, 2013). Plaintiff's Complaint does not suggest that all of those individuals took the actions in question, it simply uses improper group pleading to suggest that someone did.

Of course, this Court recognizes that, under the circumstances, Plaintiff likely lacks sufficient information about the decision-making process within the two institutions to identify by name the persons who may bear personal responsibility for his continued detention. The remedy for that information gap is not to assert implausible claims against supervisory defendants without factual support, but to make use of discovery and related federal procedures to identify the appropriate persons to name as defendants.

### III.    CONCLUSION

For the reasons set forth above, Defendants' motion is denied as to the federal constitutional claims against Defendant Taylor in Counts I and II and granted without prejudice as to the state law claims in Counts III-VI and all claims against Defendants Werner and Dean. Plaintiff shall be afforded thirty days to seek leave to file an amended complaint.

Dated: April 2, 2025                                         /s/
                                                             Stephanie A. Gallagher
                                                             United States District Judge